Good morning, Your Honors. Ben Wiesinger, Counselor-Petitioner. May it please the Court, I'd like to defer two minutes for rebuttal. Okay, keep your eye on the clock. It counts down. Your Honors, an unrepresented immigrant cannot and should not be able to concede a legal conclusion. It flies in the face of common sense and it flies in the face of good precedent, and that's Young v. Holder. Now, we have an apparent or a potential conflict between S. Young and Perez-Mejia, and I would like to impose upon this Court that this is the opportunity to clarify those two holdings. Perez-Mejia says that we should be able to rely on judicial admissions during the pleading stage. Only when the judge is not satisfied with those pleadings do we then enter the evidentiary phase. The problem we have here, Your Honors, is that Mr. Cerde was not represented by counsel. I would be more sympathetic to this argument if the underlying facts, and we have the record in front of us that tells us in minute order the nature of the prior conviction, if the underlying facts were inconsistent with what he, while unrepresented, admitted to. He admitted to the fact of his conviction. We're not arguing that. Yes. But the legal conclusion that this conviction qualifies as a crime involving moral turpitude is what I have a big problem with, Your Honors. We've been arguing about this. I'm not sure I'm going to stick him with understanding what a crime of moral turpitude is, but I think I am willing, unless you can talk me out of it, to stick him with an admission that he was convicted of a Class VI felony. A Class VI undesignated felony, Your Honor. So I don't think the designation, I don't think we can say for certain what that means. We know that he pled to, Your Honor. Nevertheless, he did admit to the fact of the conviction. The problem here, and when you do the fact of the conviction of this particular type of felony. A Class VI undesignated felony for possession of a forgery device. That's correct, Your Honor. We have two major problems. Even going with Perez-Mejia and leaving any potential conflict aside, the judge told Mr. Sereda that his conviction was a CIMT, told him it was, before he even asked Mr. Sereda to plead. That discouraged Mr. Sereda from arguing against it. It's similar to Con Omerita, 311-Fed 3960. Now, I work with Judge Phelps on a daily basis. I have the utmost respect for him. But he simply should not have gone so far as to tell my client, look, you've got this crime involving moral turpitude. Now, do you admit it? I don't think that's proper, Your Honor. Aren't we entitled to read the statute? Yes, of course, because that's what the judge says he did in rendering his decision. Well, isn't the statute – can't we read the statute and decide on the basis of the statute that he was convicted under, whether he was convicted of a crime of moral turpitude? Well, that's what should happen. I agree. However, that's not what the Board did. And I don't think this Court can affirm the Board on that basis simply on a jurisdictional issue or from a jurisdictional perspective. But even assuming that we can look at it, and I think we should, it's not a categorical CIMT. The – one of the subsections doesn't include an intent to defraud. And fraud is not inherent in that subsection A-2 of the statute. But it seems to me that he pled to – and the record tells us he pled to A-1. I don't see that in the record, Your Honor. A Class 6 undesignated is not a designated 6. It's not a designated 4. It's not even a designated 15. But A-2, as I understand it, is a Class 5 felony. Correct. Is that right? Yeah. That would be correct, Your Honor. However, this is an undesignated 6. So if he pled – and if the choices are 1 or 2, and he pled to a Class 6, that meant he pled to 1. If it was a designated Class 6, but it's not. It's undesignated. How do you understand the difference between designated and undesignated? The superior courts of Arizona have broad discretion in deciding whether to designate something as a felony or not, depending on whether in the discretion of the Court designation of a felony would be unduly harsh, given the facts and circumstances of each individual case. And so I believe that the undesignated nature of this conviction means that we cannot tell where – what exactly he pled to. And, again, we have nothing admitted as evidence in the record which would tell us one way or the other. The judge, as I believe counsel for the Department – for the government and I agree, the judge didn't admit any of these documents into the record. So we – we don't know. Given that we have Mejia – Perez-Mejia already in the books, both its amend – amended form and its initial form has some very difficult language for you to overcome. How do you distinguish the case? If we're going to – relying on Perez-Mejia and only relying on Perez-Mejia, the judge still made a critical error of being, quote, satisfied that the alien's missions were correct. Why? Pardon? Why? This is the pleading stage. We're not in the investigating stage. The pleading is made – a statement is made. It's considered by the I.J. and accepted. What else needs to be done? There's nothing to go to the investigative stage for. The statute is divisible in my – I believe it's fairly clearly divisible, even if you take away the designation class 6, class 5. And so if at the pleading stage, the judge would simply look at the statute and see that one subsection requires fraud and the other does not, that should have informed the judge that he needed to go to the evidentiary phase to see what – what Mr. Serde actually pled to or was convicted of. And so – I don't quite get what you mean. The statute is there. The defendant says I did that. Now, what's the role of the I.J. at that point? The determination of whether this conviction qualifies as a CIMT is a legal conclusion, Your Honor. I think that Perez-Mejia may have gone a little too far in saying that we should just accept all concessions from an alien at the admission stage, at the pleading stage. Well, that's what it says, and we're governed by it, and we can't overturn another panel. I'm not – So how would you distinguish the case? I wouldn't necessarily try to distinguish it, except on the basis that my client was not represented. That is a huge factor. Is it how – what is there in that case, the language of that case, that allows us to distinguish it that way? It's not necessarily in the language, Your Honor. It's in the holdings that it relied upon. Hudo, Roman were – were both represented by counsel. Those were the Second Circuit cases. Mr. Perez-Mejia was represented by counsel. Well, okay. Now, is there something other than cases cited in the language of the Court at that time that would say, no, they can't do this? Your Honors, no, there is not. So we'd have to – we'd have to find, what, go and bank to make the determination? If it is necessary, I believe it is – if it's proper, I believe it's necessary, because I think that the blanket conclusion is simply – it's too dangerous and it goes too far when we're talking about unrepresented immigrants of questionable education, questionable experience, making these legal conclusions. We've been fighting about what a CIMT is since Jordan v. DeGeorge in 51. Yeah, but here's my – here's my problem with your position in this case. I'm quite sympathetic to your position that it's a pretty miserable system of justice if we stick unrepresented, uneducated, unsophisticated people with legal admissions that they have really no idea what they're doing. On the other hand, we've got the case law, and what we have here in front of us is an NTA, and the notice to appear was in the – is in the record, was in front of the IJA, and the – and the NTA says, you were, da-da-da, convicted in the Superior Court of Arizona for the offense of criminal possession of a forgery device. And he says, yes, I was. Now, I don't care whether he says that's a CIMT or not, because once we know that he's convicted of criminal possession of a forgery device, we look at the statute, we read statute vision that talks about criminal possession of a forgery device. I can draw, just as well as the IJA can draw, the legal conclusion that this is CIMT. And I'm not relying on the uneducated alien for that conclusion. The only thing I'm relying on is his statement, yes, I was convicted of criminal possession of a forgery device. I agree with Your Honor, and the problem is that's not what the Board did. The Board relied on his concession. I think this Court has to reverse that. The Board relied on his concession what? Let me look at the Board decision here.  The Board simply relied on my client's concession. If it's all right, Your Honors, I'd like to reserve my 20 seconds or so for rebuttal. Yes, we'll make sure you have a chance to respond. And if it turns out to take more than 19 seconds, you've got it. Thank you, Your Honor. Good morning, Your Honors. I am Blair O'Connor on behalf of the Attorney General. Your Honors, in this case, the government asked the court to reaffirm the well-established rule that an alien's admissions to the factual allegations in a notice to appear, and concessions to the charge of removability during the pleading stage of removal proceedings are binding, and they relieve the government of its burden of independently establishing removability. In this case, the petitioner admitted that he had a 2005 conviction of a Class 6 felony of criminal possession of a forgery device, and that when the immigration judge asked him, he conceded that it was a crime involving moral turpitude. This concession was binding, and it precludes him from now challenging this finding of removability on appeal. Well, you know, I – if this were a case in which you were relying on the defendant or the petitioner's concession that he was convicted of a crime of moral turpitude, I would simply disagree with you. But he admitted that he was convicted under this statute. Yes, Your Honors. And we can conclude that it was a crime. Yes, Your Honor. In that – in that vein, this case is similar to the Barragan case, because there, this court relied on the fact that the alien admitted to the factual allegations, which supported removability, so that even if there was a problem with the concession of removability, the admission to the factual allegations nonetheless supported the finding of removability, and that's what we have in this case. What if – and this is not your case. I'm trying to figure out how far your argument goes. What if the alien admits to being convicted of crime X, Y, Z, and he's wrong, and we learn later that he's wrong? He's unrepresented at the time he admits it. Is he stuck with it? Oh, Your Honor, I would – my – I would say that the government would not defend that case.  I mean, if he had conceded to a crime which is legally impossible to be – I don't know if the crime's legally possible. It's just that he didn't – wasn't convicted of that crime. Oh, well, then again – again, my position, the government would not attempt to defend such a case, Your Honor. I mean, you're – Now, I'm going to ask you a slightly different question. Not would the government persist, but would the government admit that he's not stuck with it, is to say that the government would admit error if – if the I.J. had relied upon it? We would say that, again, an alien cannot admit to a factual impossibility. I mean, that such an admission is impossible. I don't mean impossibility. It's something that is not true. Yes, Your Honor. We would say that that's an erroneous admission, then, and the government would not attempt to defend that case. I emphasize, that's not this case. Yes, Your Honors. And again, we would note, with respect to the fact that the alien was unrepresented in this case, in Pagian v. Holder, 675 F3D1182, that did involve an unrepresented alien who admitted the factual allegations and conceded the movability, and this Court said that that is still permissible. It looked at the regulation, which is 8 CFR 124010C, and it does allow an I.J. to accept concessions or movability from unrepresented aliens, except for two instances, which is not the case here, if they're incompetent or if they're a minor who doesn't have a legal representative, relative, or guardian with them. But it's really routine to do that, isn't it? It is. As this Court noted in Mayapres, it's an unremarkable aspect of removal proceedings to have aliens concede charges of movability and admit the factual allegations for them. And we'd say Essiong is – there's a critical difference in Essiong, and that is because in that case, the NTA, the notice to appear, did not specify or identify the nature of the controlled substance. So the alien's mere admissions to the factual allegations in that NTA by themselves were not sufficient to determine whether or not he is removable. And there were no conviction documents that also identified the nature of the controlled substance. And that was the critical distinction in that case. Here, we have an alien who admits to criminal possession of a forgery device, a Class 6 felony. And we would note that the distinction between designated and undesignated, that has not been exhausted. That was never brought up to the agency. The board never considered it. And therefore, this Court lacks jurisdiction to consider that distinction. The government's not prepared at this time to even know what that difference is. But the NTA indicates this was a Class 6 felony, which means it had to be under Paragraph 1 of Subsection A, which, as an element, requires an intent to defraud. And as this Court noted in Tall v. MacCasey, any crime that has as an element an intent to defraud is categorically a crime involving moral turpitude. And the IJ based his finding not only on the alien's admissions and concessions, but also looking at that statute. He noted that in his decision. Looking at the statute, he found that it was categorically a crime involving moral turpitude. So other than that, the only other thing I would say that in the brief, the alien raises the possibility of the petty offense exception. Again, that issue has not been exhausted. It was never raised to the board. The board never had an opportunity to address it. Therefore, this Court would lack jurisdiction to consider it. But even if it, the Court would somehow find that it was exhausted. In Mendez-Mendez v. Holder, which is 525 F3D 828, this Court noted that the term maximum penalty possible, which is in the language of the petty offense exception, that refers to the maximum possible penalty for that crime and not to the maximum sentence based on the particular facts of the defendant's case, like under the sentencing guidelines. And here, the maximum penalty possible for this offense was over in excess of one year imprisonment. Therefore, the petty offense exception would not have applied. And this was categorically a crime involving moral turpitude. The alien's admission to that critical fifth factual allegation in the notice to appear that he had been convicted in 2005 of criminal possession of a forgery device, a Class VI felony, was enough to sustain this finding of removability. And barring any further questions from the Court, we would ask the Court to deny the petition for review. Roberts. Thank you. Thank you. Mr. Polk, why don't we put two minutes on the clock, which is what you had wished to reserve. Thank you, Your Honors. I would point out again that the immigration judge told my client that his crime involved moral turpitude before the pleading stage, discouraging him from arguing against it, thus depriving the Court of the record that it should be here to determine on a categorical or even the modified approach whether this statute qualifies as a CIMT. Unfortunately, we simply can't do that, because that's not what the Board held. The Board just said, you admitted it, you conceded it, you're stuck with it. And I think that that is erroneous, not only from a common-sense standpoint, but also from, you know, again, even looking at Perez-Mejia, if the judge is satisfied at the pleading stage, and then the case never enters the evidentiary stage. The problem was the judge shouldn't have been satisfied. This is a clearly divisible statute. We're arguing here back and forth about the nature of the conviction. That should have at least put the judge on notice that this is a – this possibility is not – it's possible this is not a CIMT. And we've got recent case law which further expounds upon the categorical analysis, DeCamp, Moncrief, et cetera, which we should be able to delve into with regard to the statute, but unfortunately, as counsel said, we can't. Let me ask you a question I think I know the answer to. Is subsection 2 of the statute, basically the aiding and abetting subsection, is that a class 6 or is that a class 5? According to, you know, subparagraph C, it says it's a class 5. However, I would submit, Your Honors, that the superior courts have the discretion to designate, to not designate. This could have been a misdemeanor, Your Honors, if the court had decided so. I don't think that that designation has any bearing on – on the ultimate conviction. And again, we're prevented from actually looking at it because that's not what the board did. So with that said, I thank you, Your Honors. I would ask that the Court grant the petition for review. Thank you. Thank you very much. Sergius Reyes v. Holder is now submitted for decision. I thank both sides for your helpful arguments.
judges: WALLACE, SCHROEDER, FLETCHER